No. 14-30537, Mitchell v. Hood v. Anderson Trahan. We'll hear from Ms. Harris first of all. Good morning, Your Honors. My name is Leslie Harris, and I represent the third-party defendant and appellant in this matter, Judge Ernestine Trahan. We are seeking from this Court de novo review of the District Court's order on an anti-SLAPP motion that comes under Louisiana Code of Procedure Article 971. In discussing this case today, I want to keep in four established rules of law in mind. First, statements concerning a candidate's fitness for office are accorded the fullest First Amendment protections. Second, as a matter of constitutional law, a charge of criminal conduct, no matter how remote in time, can never be irrelevant to a candidate's fitness for office. That's the United States Supreme Court, and that sentiment has been reiterated by the Louisiana Supreme Court. Third, true speech can never be actionable, and that's especially true when the speech occurs in relation to an issue of public concern, such as happened here in a judicial election. Finally, the legislative express purpose of Article 971, the Louisiana's anti-SLAPP statute, was to prevent abuse of the legal process, which aims to chill speech. Let me ask you just an immediate question. Sure. Which side is Mr. Hood on at this point in time? I don't know, Your Honor. I honestly don't. Well, you retained, I mean, your client retained his counsel at some point in time, didn't he? Well, he retained counsel. I believe that my client suggested his counsel. He subsequently fired that counsel and then hired somebody else. From our perspective, we believe that Hood is on the side of Mitchell, and we understand that because of the declaration that Mitchell submitted. How does your client have any standing to seek relief from Hood? How does my client have standing to seek relief from Hood? How does my client have standing to get Hood to do something? Absolutely, Your Honor. My client was in pled as a third-party defendant by Hood. Right. Under Rule 14, it allows a third-party defendant to assert any defense whatsoever on behalf of the defendant in the main demand. And that's because Rule 14, the purpose of Rule 14 is to prevent the sort of collusion that is happening in this case. Rule 14 does not say you have to adopt the defendant's defense. What Rule 14 says is that you can present any defense, and that's why we have standing to assert a defense in this case. How do you have standing to, even if you could be interpreted, how can you assert the anti-slap claim? Sure. You know, your client's not being sued, and your client didn't make a statement according, your client hasn't admitted making a statement. Well. For one of those reasons, don't you lose the anti-slap? No, Your Honor, we don't. Article 971 requires the court to look at the pleadings, and that means all of the pleadings in this case. Mitchell's complaint is against Hood for speaking, for disseminating a postcard that contained political speech that's protected. So that's number one. That's the complaint. Right. Number two is the third-party demand from Hood who is saying Judge Trahan is the one who spoke. Judge Trahan is responsible. That's the allegation before the court. So it's the complaint that Hood spoke, and then Hood's allegation that Judge Trahan is ultimately responsible. But it's not directly. Hood never says Judge Trahan spoke. He does. He, in fact, does. And Mitchell never says Judge Trahan spoke. Mitchell, in her opposition and submissions to this court, has submitted to the district court, first of all, a declaration from Hood, as evidence, saying I didn't speak. I'm sorry, Judge. She then attaches her pleadings to this court, Hood's third-party demand saying Judge Trahan spoke. In that case, either Hood spoke or Judge Trahan spoke. But what was before the court were the pleadings, and that's how the court had to evaluate the anti-slap motion. And that's clear from the legislative language of the anti-slap motion. If you look at 971A2, it requires the court to look at what is actually before it. And she, by filing Hood's declaration, she is essentially adopting that. That's a judicial admission for all practical purposes, is it not? Absolutely. Let me ask you a question. Is this whole case postured as an artful way to avoid being in state court? That's exactly our position. Well, is it not the case? And, I mean, if one of our colleagues got sued, we'd transfer the case to another court. So why wouldn't that happen in Louisiana? Wouldn't that happen in Louisiana? Are you asking if the district court should transfer this to state court? No, dismiss, yeah, dismiss it as a ruse to avoid, a ruse to create federal jurisdiction. We would be happy if that happened. I know you would. We would, in fact. We would, in fact, and we have asserted that all this is is artful pleading. All this is, and if you look at the discovery that was issued by Mitchell after the judge issued its anti-slap order allowing discovery, there was an absolutely no discovery that went to Hood. All of the discovery went to Judge Trahan, Judge Trahan's campaign workers, Judge Trahan's campaign finance committee, and other third parties who are not part of this action. All this suit is is an artful way to avoid going back to civil district court in New Orleans. Well, I understand that the way it developed, the judge could have gotten confused about this. But, I mean, didn't anyone present the argument to Judge Fallon that this is a ruse to create diversity of jurisdiction? We absolutely did. In our anti-slap motion, we set anti-slap motion and our reply in support of that. We said, listen, all this is is artful pleading. This is artful pleading by attorneys to avoid state court jurisdiction. But he didn't rule on that. He didn't rule on that issue. What he allowed was he didn't rule on anything, really. He allowed 60 days of discovery. And under Article 971, which as soon as you file it, discovery is stopped. There is no discovery. I'm sorry, can you answer my second question? Sure. Does your client continue to deny making statements? Based on the pleadings and based on what I understand from my clients, she didn't speak. But that's not what's before the court. Actually, she's not entitled to the anti-slap defense if she doesn't admit making the statement. I don't think that Louisiana has determined the issue. But Texas has determined the issue in at least three cases. And most other jurisdictions have come to the decision that if you deny making the statement, because anti-slap is so onerous, that you can't simultaneously deny making the statement and still get the tremendous benefit you get from that. You can't have it catered to an anti-slap. So tell me why you don't believe it's just that reason. Sure. Going back to the anti-slap statute itself, if you look at 971A2, a court is required to look at the pleadings before it. The Louisiana courts have said their cases, including Lambs v. Wells, where the courts look at the pleadings before it and say, based on the pleadings, there is protected speech. So we have to go back to the purpose of Article 971, which is to protect the exact kind of speech that was put out in this election. But there was speech. Somebody spoke, and that's the point. But doesn't this defeat the whole purpose of the anti-slap law? If you can challenge the candidate's campaign when the candidate herself did not write the offensive card, and then let the whole campaign be subject to onerous discovery and the cost of litigation, that goes right to the heart of what that law is designed to prevent. Absolutely, Judge Jones. And that's our position. And what the court had to look at is what Mitchell complained about. Mitchell artfully crafted this lawsuit to point the finger at Hood. When Hood said, I didn't do it, she submitted the declaration of Hood. She then adopts Hood's accusation against Judge Trahan. This is what was before the district court. And under Article 971, the plain language of that statute, you have to look at the complaint, the pleadings, and the declarations. We have to go on based on what Mitchell said. No, the declaration was from Hood saying he didn't make the statement. Mitchell has submitted in her pleadings, it's a record excerpt, Hood's third-party complaint that points the finger to Judge Trahan. So under Rule 14, we are allowed to step into the shoes of Hood as the third-party defendant and assert any defense. I'm sorry? She shouldn't have to file an answer. Nobody should have to file an answer. I think we have to go back to the Louisiana state court decisions, which uniformly... I'm sorry, Judge? There's no Louisiana court case that says that, but... I think we need to first look at Article 971 and the Louisiana cases that interpret it. Article 971 says, court, you have to look at the pleadings. The cases, the Louisiana cases interpreting 971 say, we're going to look at the pleadings. That's what we're going to look at to determine whether or not somebody spoke. And that's just the first hurdle. Here, somebody clearly spoke. It doesn't matter who spoke. Once we establish that there was speech, we go to the second prong of Article 971, and that's whether or not Mitchell can meet the elements of her causes of action. Just take an example. Suppose that this were a third party to Judge Trahan's campaign. Right. As happened in Wisconsin. A third party files independent expenditures, and they don't have a name, or they say this is on behalf of the ABC group, or somebody fakes that. And then they sue the judge. Right. And does the judge have to go to trial in the face of the anti-SLAPP laws and intended protection because they set up a fictitious claim that the candidate spoke? Or open up their campaign records, as Mitchell wants to do here. The judge wouldn't have to go to trial if it was not ever established that the judge made the statement to begin with and there's no evidence of it. So I think the judge would go all the way to trial if you don't get anti-SLAPP. That's not accurate, is it? Yes, it is. If you fail on the anti-SLAPP statute, what happens next? You go to trial, and that's in the cases, and that's what the Louisiana legislature says. Article 971 is intended to avoid the harassment of trial. You don't have regular summary judgment and all the regular things you have to prove in any other case? You could have regular summary judgment, but here what happened is the denial of the anti-SLAPP motion and opening up to harassing discovery into a judicial campaign is exactly what... How is it harassing to have to answer the question whether or not the law authorizes it? But that's not what the discovery was issued. The discovery needs to be tailored. But the court didn't ask to tailor the discovery. That wasn't his order. He effectively... Well, it's an effective denial of the anti-SLAPP statute, and that's why we're here because... The scope of the discovery is before you as well. If the discovery is onerous and your client thinks it is, we could tell them they have to narrowly tailor it. I think what you need to go back to, Judge, is back to the purpose of the Article 971 statute. We shouldn't be required to open ourselves up to discovery. That's the whole purpose of the anti-SLAPP statute. It's an immunity statute. It's an immunity statute, Judge, and this is especially true where the underlying claims can never be proven by no amount of discovery. Look at the claims before the court. An abuse of rights claim, that can't be proven by Mitchell. Under Louisiana law, there are essential elements that are missing from this abuse of rights claim, including a contractual or fiduciary duty. The invasion of privacy claim is the other claim that she asserts. And there's no invasion of privacy here, especially where this is a political candidate who puts themselves out there. So what discovery can be tailored to allow Mitchell to prove her claims? There's nothing, let alone the fact that there are no damages. There's no case. In this circuit... ...for summary judgment right there? You just told me we have to go to trial. There's no damages. You can move for summary. You've got all these options, besides anti-SLAPP, which may not be available to your client. We have Article 971 because there is political speech or protected speech. Well, that's the issue. You said we go back to purpose. Article 971, the purpose, is to protect speech. Where there is a denial of speech, there is no speech to protect. All the courts that I have read have said that, and can you point to me one authority that says to the contrary? This court in Henry v. Lake Charles American Press said the relevant inquiry is not what the defendant admits. The relevant inquiry is whether or not a plaintiff spoke. So if you go back to this court's own opinion in Henry, the relevant inquiry isn't the defendant's admission or denial of speech in evaluating the anti-SLAPP statute. The relevant inquiry is does this arise from speech, and here it does. Then you go to the second inquiry. Can Mitchell prove her substantive claims? And the answer to that is no. There are no damages that a political candidate can recover. There is no defamation damage or reputational damages because she doesn't allege defamation. The whole point of the anti-SLAPP statute is that public figures will be sued, and they should not have to face the expense, the inconvenience, the chilling effect of lawsuits  Correct. And all this is is for keeping the larger picture in mind. This is a disgruntled, losing candidate trying to get into the campaign records of the winning candidate, and that cannot be proper. All right. You have time for a break. Thank you. But when you do come back, counsel, be prepared to answer my question again about how you can strike, Mitchell's suit against Hood. Absolutely. Do we even need to reach the issue that we've been discussing at length? We don't have to decide whether anti-SLAPP covers the speech, covers non-speech, do we, in order to decide this case. We can decide this case with a question that's just been put by Judge Riegel, couldn't we? Actually, you could. What you have here is this. You basically are sitting here analyzing Louisiana procedural law. Before I begin, I'm William Aaron, appearing on behalf of the appellee, and at the counsel table is Craig Mitchell. Louisiana law gives us guidance. Louisiana is a civilian jurisdiction. It's unusual in that sense. So you look to what the legislature says. Louisiana law says the law is a solemn expression of legislative will, meaning that the courts are to interpret but not make law. Further, Article 9 of the Louisiana Civil Code says clearly and unequivocally, if a statute is clear and unambiguous, and if to interpret it that way does not result in absurd situations, then you should follow the law as written. The Statute 971 uses the word person in the first paragraph three times. It's clear that it's talking about the same person. The person has to be sued, and the person has to be able to make a prima facie showing that that suit was because of their exercise of their right of petition or their right of speech. You don't have to go very far to conclude that Judge Anderson Trahan bringing in an anti-slap motion is inappropriate at several levels. Just look at the statute itself. She does not have standing. She is not the type of person envisioned. Now, what counsel refers to is Rule 14 of the federal rules, and there is a state counterpart, which she didn't mention, but it's Article 1115 of the Louisiana Code of Civil Procedure, which basically says that a third-party defendant can step in the shoes of a defendant. Let's look at that. Step in the shoes, but step in the shoes where it is proper. She left out that word in Rule 14, and I respectfully suggest that if Hood says, I did not speak, there are no shoes for Anderson Trahan to step into. So there, again, is another reason why she should not be able to bring in anti-slap motion. So she's not referring to the claims. Right. And the defendant is not seeking contribution or indemnification from her. Therein is another reason. No one is seeking any liability against her, any damages. Of course Hood is. Well, but let me follow your thought. Basically, in order to bring in an impleter action, the person says, if I'm liable, then this other person is liable to me, either for a defense or for contribution or for indemnity. If you look at the third-party action or purported third-party action filed by Hood, it is really a brand-new cause of action. It does not say, if I owe you, then she owes me. Well, I don't think federal adjournment prevents that from happening. I respectfully suggest, Your Honor, that in terms of pure impleter, impleter has to basically be derivative. It has to be transactional. And derivative. It has to basically say that I am bringing this action if I am liable. You know, I could be forgetting my Federal Civil Procedure course, and I'd appreciate a citation to the idea that impleter is necessarily, maybe Judge Elrod can tell me, is it necessarily derivative? Actually, it is. We cited it in a brief, and my co-counsel will hopefully get it for me. I will answer it for you. But basically, the other issue is this, which no one has really looked at, is you look at 971, and 971 defines who is a defendant. Thank you. 971 defines who is a defendant, and it basically says that it's a defendant in a demand in Maine, or it is a defendant in reconventional demand. And basically, in Louisiana, reconventional demand is the equivalent under the common law of a counterclaim. If you look at 971, when it defines defendant, it's inconsistent with 1115, which talks about a third-party defendant, and Rule 14 is the federal equivalent. Pardon me. I taught in Louisiana Code of Civil Procedure and Federal Procedure, so if I get too detailed in it, I apologize, but I'm pretty passionate about procedure. And so what we have here is a situation under no scenario possible. Could Anderson Trahan bring an anti-slap? I have the citation for you. Let me read it. It says, Impleter is proper only when the third-party defendant's potential liability is dependent upon the outcome of the Maine claim. And it's Southeast Mortgage Company v. Mullins, 514 Fed 2nd, 747, 5th Circuit, 1975. So nowhere in the complaint does it assert that Trahan's liability is dependent on the liability. Nowhere in there. In fact, you've got to look at this case. They suggest that. Let me ask you to tell us about this case a little more because you're talking about getting off on anti-slap. Why shouldn't we vacate the district court's order and remand with instructions to dismiss because this is a ruse to create diversity jurisdiction? Let me address the ruse issue. First of all, Your Honor, we had to find out who B. Hood was. The postcard said B. Hood. I don't care whether you found out. You found out and then you adopted his statement. You sued him. So the principal claim now is that your client is judicially admitting that Hood did not make the statement at all. No, this is what we're saying. What we're saying is this. We really don't know Mr. Hood. We don't know whether he's truthful about this or whatever. But what we need to find out as part of discovery is what are the true facts. How can you find that out when you don't have a claim against the judge? Let me say this. The claim was against B. Hood. We had to find out who B. Hood was. We hired private investigators to find out was there anybody with the first initial B named Hood in Washington, D.C.? After a lot of money, we found out that it was a person called Brett Hood and we matched up the address and that's how we got here, Your Honor. So it wasn't collusion trying to sue Judge Tran. The issue was the postcard said this was brought to you by B. Hood. So we went looking for B. Hood. And I accept that as a perfectly legitimate reason to file the suit initially. Now let me go further. What happens then is when B. Hood gets sued, B. Hood contacts Kelvin McClinton, who he joins as a third-party defendant, and Kelvin McClinton, who's a person he knew through fantasy football and they were in a fraternity together, contacts Judge Tran and they then tell Hood, we're going to get you a lawyer. They get him a lawyer. He files a very vanilla response and then Mr. Hood talks to another lawyer and says, you know, you're going to take the fall for this. He then gets another lawyer. He then gets another lawyer and that's when he brings in these other people. Now let's look at jurisdiction. Jurisdiction is based on diversity. The plaintiff is from Louisiana. Mr. Hood is from D.C. Now, who did Mr. Hood bring in? Mr. Hood brought in his third-party claim, a citizen of Maryland, yet again establishes diversity jurisdiction. So here's what I think should have happened. The impleader is improper under Fifth Circuit precedent from 1975. What Anderson Trahan should have done, Your Honor, in my opinion, was to basically attack the impleader and get knocked out of the case. Well, why don't you cut her loose then? We don't have her. You're getting discovery against her whole campaign. You can only do that if she's in the suit. Let me be clear, Your Honor. Let me be very clear in what Judge Fallin allowed us to do. If you read his article, it's in Record Excerpt Tab 3. He basically says you can find out who made the speech and who issued the thing. So you can file a suit. You're a losing candidate and you can file a suit against John Doe defendants and then do discovery against the candidate's campaign in order to wear them down and show the right of any person who's going to contribute to that campaign in the future or, heck, just to get revenge. No, Your Honor. On the theory of that, we don't know who did the speech, but we're going to spend $100,000 of their campaign funds until they tell us. In fact, they have an insurance company that's covering this. So the campaign is not spending anything. What Judge Fallin was saying is this. This is a case of first impression. I've never seen a case where the person bringing anti-SLAPP doesn't embrace the speech. So the judge said, Let's find out who made the speech. Now, one of the things we found out, Judge, and there are allegations here of criminality, that there's been identity theft, there's been mail fraud, there's been wire fraud. No, those are Hood's allegations. Those are allegations? They're not your client. And that's not even you're suggesting that that should be dismissed sua sponte. We can dismiss if there's no jurisdiction, and that's why I'm thinking, now that your client agrees that Hood didn't make it. We're not. Excuse me, your client only sued Hood. There's no jurisdiction over her claim, period. Not really. We don't know if Hood is telling the truth. Oh, come on. Do you agree that Hood didn't make the statement? No. That's important. Have you agreed that Hood did not make the statement? We agree that Hood says he didn't make the statement. Hood filed a declaration. That's what we agree. We agree that he says he didn't do it. He filed a declaration on the penalty of perjury, did he not? And, Your Honor, the facts show that. And your client adopted that by filing it in the district court. Your Honor, it was already filed. He already filed it in the district court. It doesn't mean you agree. It doesn't mean that we agree to it, Judge. What we're saying is this. Mr. Hood has already said that he agreed with McClinton that he was going to give a reference to a judge that he never heard of. So, we think he's suspect to start off with. What we're saying is this. For the purposes of anti-SLAPP, we have a situation where the purported speaker or the purported shoes that one wants to step into are not embracing the speech. That's solely for the purposes of 971. In terms of discovery, we have issued discovery to Hood, which they did not mention. We don't know what to believe of Mr. Hood. But wouldn't it be improper? Yes, you could. That would take Judge Trahan out. Now, what will happen then is we do discovery, and Judge Fallon said, we will follow the evidence to see where the truth leads. But isn't your position that the impleter is improper? It is improper. It is improper. And what we suggest is instead of bringing the anti-SLAPP, what Anderson Trahan should have done was filed a motion to strike the impleter. But let me tell you why she does not want to do that, and let me tell you why, Your Honors, that she does not want to embrace the speech. Louisiana law basically says that in a judicial context, it is illegal, unethical, impermissible for a candidate to make a false statement about another candidate. She cannot embrace the speech. That's why. So what? My point, though, is this, is that we have a situation where an election is affected, in our opinion. I've seen a TV ad in Louisiana for a judicial race where one candidate had a picture of his opponent wearing a robe behind bars. And, Your Honor, what usually happens is this, and here's the dilemma with this case. Normally, the attack piece that's false comes out early enough where an action can come before a judicial body. On election day. Right. It happened on election day. That's the problem. Now, if you look at it, what happened is this. The appellee ran first by 1,800 votes in the primary. She lost by 266 votes in the runoff election. What we're saying is this, is that the normal situation would have been bring your attack piece early if it's fraudulent or whatever. You go before a committee. It decides it. That couldn't happen. We can't tell people to run their attack piece. Well, you really can't. I'm not the only one here who's run for office in this room. You can't control the people who run their attack piece. I agree. But I think the public is entitled to fair elections. I think the public is entitled. You're not the only one who's run for office, by the way. I did backgrounds. I realize that. I remember a speech you gave in terms of sometimes state court judges not being treated fairly, et cetera, and the good work that they do. I agree that they do that. But what I respectfully suggest is what you have here is bad behavior, bad behavior by lawyers, and to quote Judge Reveley, I think you gave a speech with him, you used the word skullduggery. I think what you have here is skullduggery. You have a situation where somebody, and this is not about anonymous speech. We're not talking politics, okay? Fine. Let's get back to this because pursuing this issue, if you agree, standing here in court before us, that the impleaders should be dismissed as improper, of course Mr. Hood's not before us. So I'm not sure whether we can do that or not. But if you're judicially admitting that, you're making representation in court, then doesn't that go to the heart of what the court ordered in discovery? Because the only discovery that the court ordered went to Trahan's campaign. No. The discovery went to, and if you go to Record Excerpt 3, Tab 3 of Record Excerpt, the judge specifically said he wanted to know who made the speech and who authorized the postcard to go out. It may end up not being her, maybe somebody else. Well, that's what I'm saying. The judge is then stepping into the shoes of the litigant, because if you as the litigant don't know who made the speech, then you've got nobody to sue and there's no case of controversy. Unless you say, you can take a deposition of Hood if you make, I'm sure you can. Have you taken a deposition of Hood? We can't because the anti-slap motion stopped all discovery. That's the problem. It's not just discovery in relation to Trahan. So you're basically doing a huge end run around the anti-slap motion to get, if you had sued Trahan directly, there would have been no diversity jurisdiction, right? Correct. And she might have invoked, she could well have invoked the anti-slap on her behalf. Perhaps, but let me say this. The information, we operate on the information we had. The postcard said it was sent out by B. Hood. We tracked down and found B. Hood in Washington, D.C. I'm not saying your case was illegitimate to begin with. I'm saying it is now illegitimate to use the defendant who did not speak for the judge to allow you to conduct a fishing expedition for who did speak. Suppose it wasn't Trahan at all. Well, but here's the problem, Judge. We know that there was a conspiracy because, hear me out, please. We know that there's a conspiracy because Hood says, I was called by McClinton and asked, if anybody asked about the judge, would you give her a good reference? Then why don't you sue McClinton? We didn't even know about McClinton. I know that. You could sue him again. I can't sue anybody because the proceedings are stayed, Judge. Then that's what the anti-slap law is all about. If McClinton made the statement and used Hood's name, he'd be protected by anti-slap, would he not? Perhaps. Let me finish. We assert and we cite on page 24 of our brief the illegality exception in the cases Flately v. Morrow, which is a California decision. The reason why we go to California, there's been two Louisiana decisions that basically say Louisiana's anti-slap is almost identical to California's. If your court is aware, California back in 1992 was the first state to come with this, dealing with developers. Louisiana didn't come in until 1999. What we're respectfully saying is that it is not a quantum leap to borrow from another state to see what another state has done. What we have said is this. If you look at what Hood says, Hood says his identity was stolen, that he never gave permission to put his name on this thing. You've got identity theft. You then have misrepresentations, the use of the U.S. mail, et cetera. So it keeps getting more entangled in what's going on. We're not going to be able to resolve anti-slap today, are we? This is what I think. This is what I think. There are unnamed parties. The problem is this. Judge Fallon is an excellent judge, and Judge Fallon was caught on the horns of a llama. I've got a case here where somebody brings anti-slap, but they won't embrace the speech. What do I do with it? So he said, well, look, maybe somebody can invoke it. Let's find out if there's somebody. So you can do limited discovery. Judge, the discovery we did was very limited. We noticed one-hour depositions, which are going to be real. What was your role? Do you know who did it? Not intrusive. How many one-hour depositions did you notice? Maybe four or five. It wasn't really anything. How many documents and emails did you ask for? Well, what happened, we didn't give her a fault, but the stuff we got showed some interesting things. It was a series of printers, so it went from one printer to another printer, and in one instance we found that the attack piece was supposedly ordered by the person who was attacked. Now, aside from raising eyebrows on that, it just shows that there was a plan here to hide from everyone what was really going on, and Judge Fallon rightly said, I'm going to give you a little leeway. I'm going to let you go in and see if we can figure out if somebody really does have it. I'm sorry to say this, and I know nothing about these individuals, but I do know that you are directly attacking a person who has been elected by the laws of Louisiana to serve in an important post. It is the province of a lot of strange people in this world to file lawsuits for things that are not remediable, and your client has no claim, even against Trahan individually, because she was in fact arrested. That's what the thing said, right? She was in fact arrested. She's a public figure. It's a statement of fact. It may be damaging, but it is absurd to do an end run around the people's choice and the hurly-burly of politics in the courtroom like this. Well, Your Honor, let me say this. There's a difference between falsity and hyperbole. My dear friend Phil Whitman, when we argued this in the trial court, he said, well, it's mere hyperbole. Well, the fact that someone has an altercation is one thing. The fact to accuse them of viciously beating down to the ground a pregnant woman goes beyond mere hyperbole, Your Honor. So I respect... The premise of the last question that you were asked was that you were going after a sitting judge. You are not to this day going after any judge, are you? No, the judge's name didn't come up, Your Honor, until Mr. Hood interjected it. And you're not suing her. No, we're suing Hood, and what we need to find out is if Hood's telling the truth, Hood's saying, well, it really wasn't me, but I was a part of this. So we need to find out, were you really a part, Mr. Hood? And did you really do it, even though you say you didn't? Or was it Mr. McClinton? Or who exactly was behind this? You still have no claim because your client is a public figure, and she has no claim. This is just like the Flint v. Hussler case. Well, Your Honor, New York Times v. Sullivan. Exactly. Basically, you know, says that if you're a public figure, yes, you're open to attack, but the problem is this, is that if you can show malice or some alternative. You know, some of us have been the victims of false attacks in the press, relentlessly, okay? I understand that, Your Honor. You don't need to tell me about that, but you don't, you're a public figure, you've got to take them. Well... Can I ask you, will this case be over if we determine that Anderson's trademark did not have authorization to bring the motion to dismiss, and then you don't have to decide anything else? You don't have to decide anything else. This is an interlocutory appeal, okay? On the discrete issue of whether or not she has standing, and if you want to make it even more discrete, whether or not the judge was correct in following the language of 971 and allowing limited discrete discovery. Those are the issues. So you could refine it down to, we think he had the right to allow limited discrete discovery, or he didn't. Or you can branch it out a little bit further and basically say, well, he should have gone further and said, since she did not embrace the speech, she does not have standing for anti-slap. We think the judge should have gone that far. But, like I said, I've known Judge Fowler for a long time. I think he really wanted to ferret the facts out and find out if there really was someone who could bring... Well, again, as you point out, Louisiana is a civilian jurisdiction, but that doesn't make it an inquisitorial jurisdiction under the civil law. So I'm sorry, we're not here to satisfy our personal interests. Your Honor, I was merely speaking to the procedural issues that were before the court. And if it seemed as though I was attacking an elected official, it was not my intent to do that. No, not at all. Not at all. I'm very grateful for this presentation, and you've been very helpful to us. Thank you, Your Honor. All right. Ms. Harris, the last thing you cited was this decision of the Fifth Circuit in Henry B. Blake Charles' American Press. Correct. And at page 566 at 3rd, 170, it talks about Article 971. To succeed on Article 971, the defendant must first make a prima facie showing that Article 971 covers the activity underlying the suit. That is, the defendant must establish that a cause of action against him arises from an act by him in furtherance of the exercise of his right of petition of free speech, blah, blah, blah, and incites a Louisiana case, Dar v. Boudreau. Correct. Correct, Your Honor. And then we have to look at the rest of Article 971A2, which requires the court to look at what's before it, which are the pleadings and the declarations establishing liability and defenses. I want to go back to the Louisiana Supreme Court case of Hebert, in which the court said this is the Louisiana Supreme Court applying Article 971. Article 971, and this is a quote, requires a probability of success based upon what is presently before this court, plaintiff's petition as presently drafted. Plaintiff has not demonstrated a probability of success against the defendant. So what we have to look to is what is before the court. And what's before the court is a complaint based on protected political speech accusing Hood of bad behavior. Hood then points the finger to Judge Trahan, Judge Raveley, and that's why we are here, and that's why we can step into the shoes of Hood, because Hood is ultimately saying, third-party Judge Trahan, you are responsible for this speech. Well, let's ask this other question. He contends that in order that you could have moved to dismiss the third-party complaint on the basis that an impleader under federal rules must be a derivative cause of action. It is a derivative cause of action. We're not moving to dismiss the third-party claim. We need to stay in this case because ultimately, as he's admitted, the discovery is going to us. So we have to have a procedural mechanism to challenge the discovery because ultimately what the suit is about is Judge Trahan's campaign. This is a losing candidate who has sour grapes about losing the campaign. And you don't want us to dismiss the claims against your client because you want to stay in here to control the discovery. Is that what you're saying? No, I want all of this case to be dismissed. So do you want us to dismiss the impleader today if we have the authority? Impleader. Impleader, yes. Thank you. If you have the authority to dismiss the impleader, dismiss the impleader. If you have the authority to dismiss Hood based on the fact, the claims against Hood, based on the fact that Mitchell has adopted a declaration saying, I didn't do it, then I think that's what you need to do, and we'll go back to state court. That's fine. Where we ultimately should be, Your Honors, is in state court because we all know that the reason why we're here is because Mitchell believes that my client put this postcard out. But you won't be in state court if we dismiss the impleader. I don't know where we'll be. We'll be in state court if you dismiss Hood because you know that this is going to continue on. This action, this discovery into this political campaign, this protected speech will continue on from this losing candidate. If we were to dismiss the impleader, then what's the consequence for Judge Fallon's discovery order? It stays. The discovery order would continue on. If you don't review this decision de novo and grant the relief that we're asking, which is dismissal of Hood, then the discovery would continue on, an intrusive, harassing discovery into protected political campaigns. Dismissal of Hood? Under 971. You're moving for us to dismiss Hood under 971? Article 971? Not just Anderson's right hand, but also Hood's? We're stepping into the shoe. This is the whole procedural posture. You can't, on the one hand, allow the plaintiff to say, we don't know whether Hood said this or not, and then, on the other hand, deny Hood any slack. Correct. You can't do both of those. And that's what he's trying to do. He stood up and said this. Now there's this large conspiracy that we might be involved with. Well, either Hood spoke, and we have to go on that pleading, and if it's speech, it's protected speech, and ultimately, when it comes down to it, the causes of action asserted by Mitchell cannot stand. Do you represent Hood? Do I represent Hood? No, I represent the third-party defendant, and we have to stand in the shoes because the finger has been pointed at us that we are liable for the speech. Well, you can't ask him to dismiss the plaintiff against another party. Of course you can't. Under Article 971, and that's what we're asking you to do, is grant the anti-slap statute based on this protected speech and the lack of merits of this plaintiff's claims. Thank you. Okay, thank you very much. Thank you, Your Honor.